**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Russell Millard HAMPTON, Defendant–Appellant.**

**No. 79SA361.**

Supreme Court of Colorado, En Banc.

Oct. 6, 1980.
Rehearing Denied Nov. 24, 1980.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., James F. Carr, Asst. Atty. Gen., Denver, for plaintiff–appellee.

The Legal Clinic of South Eighth Street, Dick Gottsegen, Colorado Springs, for defendant–appellant.

LOHR, Justice.

This appeal raises questions concerning the ability of a defendant charged with Driving After Judgment Prohibited, section 42–2–206, C.R.S. 1973,[1] to collaterally attack traffic offense convictions which form the basis of the defendant's habitual traffic offender status. The trial court prohibited the appellant, Russell Millard Hampton, from asserting the constitutional and statutory invalidity of such convictions. We conclude that the constitutional challenges

---

1. Section 42–2–206, C.R.S. 1973, states in pertinent part as follows:

"(1) It is unlawful for any person to operate any motor vehicle in this state while the revocation of the department prohibiting the operation remains in effect. Any person found to be an habitual offender, who is thereafter convicted of operating a motor vehicle in this state while the revocation of the department prohibiting such operation is in effect, is guilty of a class 5 felony. No portion of such sentence may be suspended, and no probation may be granted; except that, in a case where the defendant establishes that he had to drive the motor vehicle in violation of this subsection (1) because of an emergency, the mandatory prison sentence may not apply."

should have been considered. Therefore, we reverse the appellant's conviction and remand this case to the trial court for further proceedings.[2]

We have outlined the relevant statutes and procedures in several recent cases involving issues related to those which the appellant asserts in this case. *See People v. Roybal*, Colo., 617 P.2d 800 (1980); *People v. Roybal*, Colo., 618 P.2d 1121 (1980) (Roybal I); *People v. McKnight*, Colo., 617 P.2d 1178 (1980).

In an administrative hearing before the Colorado Department of Revenue, Motor Vehicle Division (DMV), the appellant was found to be an habitual traffic offender and his driver's license was revoked for five years. *See* sections 42–2–202, 203, and 205, C.R.S. 1973. His habitual traffic offender status was based upon that part of section 42–2–202(3), C.R.S. 1973,[3] which confers such status upon anyone who has ten or more traffic offense convictions for moving violations, each of which requires as assessment of four or more points, within a five–year period. See section 42–2–123(5), C.R.S. 1973 (1979 Supp.), for the point system schedule. The conviction for Driving After Judgment Prohibited, from which this appeal has been taken, is based upon a charge that the appellant operated a motor vehicle while the administrative order revoking his driver's license remained in effect. *See* section 42–2–206, C.R.S. 1973.

Before his trial to the court for Driving After Judgment Prohibited, the appellant moved that the trial court "suppress" prior convictions. This motion was based upon the alleged invalidity of certain of the twelve traffic offense convictions which were used by the DMV to find that the appellant was an habitual traffic offender and to revoke his driver's license. The appellant contends that the invalidity of those convictions makes the administrative order revoking his driver's license invalid and so destroys the foundation for his conviction of Driving After Judgment Prohibited.

Hampton challenges the traffic offense convictions on two principal grounds: (1) that his constitutional right to counsel was violated because he was not represented by counsel and had not waived such representation; and (2) that his constitutional right to due process of law was violated because he was not advised of the number of points to be assessed for those convictions.

As evidence of invalidity, the appellant introduced the DMV's records of nine of the challenged convictions. Those records consisted of copies of the summons and complaint for each offense, with the disposition in each case noted on the back.[4] All of the

---

2. In the same trial, the defendant was also convicted of speeding, section 42–4–1001, C.R.S. 1973 (1979 Supp.), and operation of a motor vehicle under a foreign license during a time when his Colorado license was revoked, section 42–2–126, C.R.S. 1973. Neither of *those convictions was appealed; reversal of the* conviction for Driving After Judgment Prohibited does not affect those other convictions.

3. "(3) A person is also an habitual offender if he has, within any five–year period or portion thereof, ten or more convictions of separate and distinct offenses involving moving violations which provide for an assessment of four or more points each or eighteen or more convictions of separate and distinct offenses involving moving violations which provide for an assessment of three or less points each in the operation of a motor vehicle, which convictions are required to be reported to the department and result in the assessment of points under section 42–2–123, including any violations specified in subsection (2) of this section."

4. The convictions occurred as follows:

| 8/02/73 | Speeding |
| 9/26/73 | Careless driving |
| 5/15/74 | Speeding |
| 6/26/74 | Disobedience to stop sign |
| 4/16/76 | Careless driving |
| 4/16/76 | Speeding |
| 10/28/76 | Disobedience to traffic signal |
| 10/28/76 | Disobedience to traffic signal |
| 10/28/76 | Speeding |

On the back of the DMV copy of the summons and complaint for each offense was a box for the disposition of the case. One line was labelled "V.B." for violations bureau. Another line was labelled "COURT." Seven of the summons and complaints had listed under COURT a fine (often with some part suspended) with an additional sum for court costs. One of the summons simply repeated the offense on the line for court disposition, and the last had a fine listed under V.B.

convictions were for moving violations based on municipal ordinances; each offense carried a point value of four or more. Eight of the challenged convictions were obtained in the municipal court of Colorado Springs, most, if not all, based on pleas of guilty. The other conviction was obtained when the appellant acknowledged guilt and paid his fine at the violations bureau of the municipal court.

The appellant next introduced the testimony of the custodian of the Colorado Springs municipal court records that the court as a matter of course had destroyed all records dated prior to 1975. The DMV copies, therefore, were the only remaining records with respect to four of the challenged convictions. Finally, the appellant testified that in none of the proceedings leading to the nine convictions had he been represented by counsel, advised of his right to counsel, or advised of the points to be assessed against his driving record for each conviction.

In rebuttal the People recalled the municipal court custodian who produced a written advisement, signed by the appellant, containing an explanation of the appellant's rights, including the right to retain an attorney or to have counsel appointed if indigent. This advisement related solely to the April 16, 1976, conviction for careless driving. No advisements were produced with respect to any of the other convictions.

Defense counsel argued that the appellant's testimony, coupled with the lack of any indication in the conviction records that counsel had been present or validly waived or that the points had been disclosed, established the invalidity of these convictions for the purpose of imposing sanctions under section 42–2–206, C.R.S. 1973.

The trial court denied the appellant's motion to suppress the traffic offense convictions, noting that he could have appealed from those convictions when rendered. The trial court found the appellant guilty of Driving After Judgment Prohibited and this appeal followed.

## I.

Where constitutional defects are alleged, a defendant may challenge the convictions supporting his status as an habitual traffic offender at his trial for Driving After Judgment Prohibited. *Roybal I, supra; People v. Heinz*, 197 Colo. 102, 589 P.2d 931 (1979); *see People v. Able*, Colo., 618 P.2d 1110 (1980). If the appellant's constitutional rights were denied in obtaining the underlying traffic offense convictions, those convictions may not be used as part of the foundation for the criminal sanctions prescribed by section 42–2–206, C.R.S. 1973. *Roybal I, supra; People v. Heinz, supra; see People v. Able, supra.*

## II.

### A.

Absent a valid waiver of the right to counsel, a conviction obtained against a defendant who is not represented by counsel may not be used to establish habitual traffic offender status for the purpose of imposing punishment for Driving After Judgment Prohibited. *Roybal I, supra; see* U.S. Const. amends. VI, XIV; Colo. Const. art. II, § 16; *People v. Able, supra; People v. Heinz, supra.* This rule applies even though the prior conviction resulted from a plea of guilty and involved no actual imprisonment. *Roybal I, supra.* At least with respect to the convictions resulting from court appearances, this case falls squarely within the holding of *Roybal I, supra.* As in that case, the convictions here were punishable by a sentence to jail.[5] Here, no incarceration was imposed; in *Roybal I* we assumed no incarceration was imposed.[6] Therefore, our construction of the Driving After Judgment Prohibited statute in *Roybal I* to conform to the prohibition of *Balda-*

5. Under the municipal code of Colorado Springs the defendant was subject to a punishment of up to 90 days in jail and/or $300 in fines upon each of his convictions. Colorado Springs Revised Municipal Code 6–1–4, 15–1.

6. The record did not establish whether Roybal was sentenced to jail.

sar v. Illinois, —— U.S. ——, 100 S.Ct. 1585, 64 L.Ed.2d 169 (1980), against collateral use of uncounseled convictions applies with full force in the present case.

## B.

There is no valid reason why this principle should not extend to a conviction obtained when the appellant admitted guilt and paid his fine at the violations bureau. Although incarceration was not a possible consequence of the conviction, the need to insist upon its constitutional validity is still present since, in its later use under the habitual traffic offender statute, such a conviction has the same effect in supporting loss of liberty for violation of section 42–2–206, C.R.S. 1973, as a conviction based upon proceedings in court. *Baldasar v. Illinois, supra*, holds that, while an uncounseled conviction may be valid to impose a criminal punishment other than imprisonment, it may not be used later to support or enhance a deprivation of liberty for another offense. We hold that a traffic offense conviction obtained by acknowledgement of guilt and payment of a statutorily specified fine at the violations bureau may not be used to support the criminal sanctions of section 42–2–206, C.R.S. 1973, unless the person who elects the fine–payment procedures is informed that he has a right to counsel and unless he waives that right.[7]

## III.

█ The appellant also attacks his underlying traffic offense convictions on the ground that he was never informed of the points that were to be assessed upon convic-

tion. *See Stortz v. Colorado Department of Revenue*, 195 Colo. 325, 578 P.2d 229 (1978). There is no indication in the records introduced by the appellant that such a disclosure was made. However, defects in the underlying convictions which are not of constitutional significance and which do not deprive the DMV of jurisdiction to revoke the appellant's license may not be raised in a criminal action under section 42–2–206, C.R.S. 1973. *People v. Able, supra*.

█ The failure to warn a person charged with a traffic offense that he will accumulate a designated number of points against his driving record upon conviction does not breach any constitutional protections. *See People v. Heinz, supra*.[8] The imposition of points has no immediate criminal effect. Such an assessment does not by itself allow the imposition of any additional punishment. *See* American Bar Association Standards Relating to Pleas of Guilty 14–1.4 (approved draft, 1978). While it may allow the state to revoke the defendant's driver's license, this civil consequence need not be disclosed to satisfy any constitutional mandate. The appellant's argument is therefore no different than the one rejected in *People v. Heinz, supra*. In that case we held that neither due process nor Crim. P. 11 required a trial judge to inform a defendant that his plea of guilty to a traffic offense now subjected him to license revocation and possible future criminal punishment for violation of the revocation order. And, in *People v. McKnight, supra*, we held that due process of law does not require that the DMV advise a person whose driver's license is revoked by reason of his sta-

---

7. R.T.V.B. 7, effective January 10, 1978, states that, before an acknowledgment of guilt and payment of fine can constitute a conviction, the defendant must be advised of a number of rights, in writing, including the right to representation by an attorney and to request appointment of an attorney if indigent.

8. While there is some due process language in *Stortz, see Dunn v. Tice*, Colo.App., 598 P.2d 530 (1979), that case emphasized that the underlying convictions were themselves clearly valid. The failure to comply with the *statutory* provision requiring notice of points for convictions based upon penalty assessments only pre-

cluded the DMV from suspending a defendant's license based on such convictions. *See* sections 42–2–202(4), 42–2–123(6)(a), and 42–4–1501(4)(a), C.R.S. 1973 (1979 Supp.). Moreover, the statutory requirement of disclosure of points has been held not to apply when the traffic convictions were obtained after a court appearance. *Purcell v. Thomasi*, Colo.App., 608 P.2d 844 (1980). Even if the statutory provision applied to all of the appellant's convictions, *People v. Able, supra*, prevents him from asserting that defect in the trial for Driving After Judgment Prohibited.

tus as an habitual traffic offender that driving in violation of the order of revocation will subject him to prosecution under section 42–2–206, C.R.S. 1973. Here, as in *Heinz* and *McKnight*, the appellant need not be advised of his continuing duty to act as a law–abiding citizen.

## IV.

Our holding today that the appellant had the right to counsel in the proceedings which resulted in the convictions used to support his habitual traffic offender status is not conclusive on the question of whether that right was accorded or validly waived. We held in *Roybal I, supra*, that in order to bar the use of an underlying traffic offense conviction in his trial for Driving After Judgment Prohibited the defendant must make a prima facie showing that the prior conviction was invalid. Once such a showing has been made, the People have the burden to establish that the conviction was constitutionally obtained. *Id.*

We deem it inappropriate to attempt to determine from the record whether the traffic offense convictions met constitutional standards. Such a determination should be made by the trial court, applying the standards of *Roybal I.* Because the parties and the trial court did not have the benefit of *Roybal I* in presenting and deciding the instant case, the parties should be given an opportunity to present additional evidence as to whether the relevant traffic offense convictions were obtained in violation of the appellant's right to counsel.

## V.

The appellant has challenged the constitutionality of the Driving After Judgment Prohibited statute on other grounds, which have been resolved adversely to his position in *People v. McKnight, supra*, and *People v. Scott*, Colo., 615 P.2d 680 (1980). We adhere to the rulings in those cases.

We remand this case to the trial court for further proceedings consistent with the standards set forth in this opinion.